UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY BIFARELLA,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No.  2:13-cv-341-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties' cross-motions for summary judgment are pending. For the reasons discussed below, defendant's motion is granted and plaintiff's motion is denied.

I.   BACKGROUND

Plaintiff protectively filed an application for a period of disability and DIB on May 11, 2010, alleging that she had been disabled since May 1, 2007.[1] Administrative Record ("AR") 66, 135-142. Plaintiff's application was denied initially and upon reconsideration. *Id.* at 68-72, 74-

---

[1] Plaintiff subsequently amended her alleged disability onset date to January 30, 2009. AR 25.

1

78. On September 7, 2011, a hearing was held before administrative law judge ("ALJ") William C. Thompson, Jr. *Id.* at 43-65. Plaintiff was represented by counsel at the hearing, at which she and a vocational expert ("VE") testified. *Id.*

On October 18, 2011, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i) and 223(d) of the Act.[2] *Id.* at 25-38. The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2014 (Exhibit 10E).

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2. The record contains no evidence that the claimant engaged in substantial gainful activity since January 30, 2009, the amended alleged onset date (Exhibit 2D) (20 CFR 404.1571 *et seq.*).

\* \* \*

3. The claimant has the following severe impairments: degenerative discs of the lumbar and cervical spine (Exhibit 5F, p. 5), fibromyalgia (Exhibit 4F, p. 4; Exhibit 5F, p. 5), history of skin cancer, status post treatment without recurrence (Exhibit 3F, p. 8; Exhibit 5F, p. 1), and obesity (Exhibit 4F. p. 8; Exhibit 5F, p. 5) (20 CFR 404.1520(c)).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

\* \* \*

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: the claimant cannot climb ladders, ropes, or scaffolds. The claimant cannot work at heights or around hazardous machinery.

\* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

\* \* \*

7. The claimant was born on October 9, 1957 and was 49 years old, which is defined as an individual "closely approaching advanced age," on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564.).

\* \* \*

9. Transferability of job skills is not material to the determination of disability because using Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

\* \* \*

3

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

* * *

11. The claimant has not been under a "disability," as defined in the Social Security Act, from May 1, 2007, through the date of this decision (20 CFR 404.1520(g)).

*Id.* at 27-37.

Plaintiff's request for Appeals Council review was denied on December 20, 2012, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-9.

II.   LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

/////

/////

/////

III.  ANALYSIS

Plaintiff argues that the Commissioner erred in (1) failing to credit the treating opinion of plaintiff's nurse practitioner; (2) discrediting plaintiff's testimony without clear and convincing reasons; and (3) discrediting lay person testimony without legally sufficient reasons.

A. The Commissioner Properly Weighed the Medical Opinion Evidence

Plaintiff argues that the ALJ erred in rejecting the opinion of her treating nurse practitioner without sufficient reasons. ECF No. 17 at 11-14. Ms. Monaghan submitted a questionnaire assessing plaintiff's functional capacity. AR 418-422. Ms. Monaghan opined that plaintiff could less than occasionally lift and carry up to 10 pounds but never more than that. *Id*. at 419. She further opined that plaintiff could walk, sit, or stand for less than one hour in an eight hour workday; and never climb, stoop, crouch, kneel, crawl, push, or pull, but occasionally balance and reach. *Id*. at 420- 421.

The applicable regulations provide that a nurse, although a treating medical source, is viewed as an "other source" and not as an "acceptable medical source." SSR 06-3p; 20 C.F.R. §§ 404.1513(d). In rejecting testimony from an "other source," the ALJ need only give germane reasons for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The ALJ may consider the mere fact that an opinion is not from an "acceptable medical source" in giving it little weight. *See* SSR 06–3p, 2006 SSR LEXIS 5; 20 C.F .R. § 404.1527(c). Here, the ALJ discounted the opinion of Ms. Monagahen because she was not an acceptable medical source, AR 33, and this was an appropriate, indeed germane reason for doing so.

Furthermore, Ms. Monaghan's opinion was in conflict with Dr. Chan. In assessing plaintiff's functional capacity, the ALJ specifically adopted the opinion of Dr. Chan, a non-examining physician. AR 31-33. Dr. Chan opined that plaintiff could lift 20 pounds occasionally and 10 pounds frequently; walk and/or stand 6 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; and was unlimited in pushing and pulling. *Id*. at 311. He further opined that plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. *Id*. at 312. Because Ms. Monaghan was not an acceptable medical source, the inconsistency with Dr. Chan's opinion, as well as her status as an "other source," was a permissible basis for rejecting her opinion.

5

Plaintiff also argues that the Commissioner's decision contains legal error because the Appeals Council failed to properly consider opinion evidence submitted with plaintiff's request for review. ECF No. 17 at 16-17. Defendant does not address this argument. The circumstances pertaining to it are as follows.

Dr. James Mosson began treating plaintiff in 1988. AR 526. On November 17, 2011, (after the ALJ issued his decision), Dr. Mosson hand wrote at the end of Ms. Monaghan's disability assessment, "I agree with above." AR 422. Further, Dr. Mosson explained in his own disability report, dated October 31, 2011, that plaintiff could "no longer lift or sit for long periods of time." *Id.* at 537. He also explained in the report that plaintiff had been worked up by several doctors who agreed the she was "disabled from her fibromyalgia and sciatica." *Id.* Finally, Dr. Mosson submitted a letter to the Appeals Council, dated May 17, 2012, in which he opined that plaintiff could not lift more than five pounds, bend, sit longer than 20 minutes, or stand longer than 30 minutes at a single time. *Id.* at 526. He further stated that he believed plaintiff was "totally unable to work." *Id.*

Plaintiff submitted Dr. Mosson's opinions, as well as other miscellaneous medical records, to the Appeals Council in support of her request for review. *Id.* at 2. On December 20, 2012, the Appeals Council denied plaintiff's request for review, finding that there was no reason to review the ALJ's decision. *Id.* at 1. The denial specifically stated that the Appeals Council had looked at miscellaneous medical records dated January 16, 2012 through April 13, 2012, but found that such evidence did not affect the decision because it concerned a period of time after the ALJ's decision. *Id.* at 2. Plaintiff does not challenge this finding.

Plaintiff argues, however, that the Appeals Council "did not reference Ms. Monaghan's report reviewed and affirmed by Dr. Mosson; did not reference Dr. Mosson's October 31, 2011, disability evaluation, nor his May 2012 letter report—all of which confirmed Ms. Monaghan's disability functional limitations." ECF No. 17 at 16. Plaintiff further argues that Dr. Mosson's opinion was relevant and should have been considered. *Id.* Plaintiff contends that the Appeals Council erred by failing to provide specific and legitimate reasons for rejecting Dr. Mosson's treating opinion.

1    Although the Appeals Council declined to consider miscellaneous medical records that
2    post-dated the ALJ's decision, contrary to plaintiff's contention, the Appeals Council considered
3    Dr. Mosson's opinion, as it was required to do under the Commissioner's regulations. *See* 20
4    C.F.R. § 404.970(b) ("If new and material evidence is submitted, the Appeals Council shall
5    consider the additional evidence only where it relates to the period on or before the date of the
6    administrative law judge hearing decision."); *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d
7    1228, 1233 (9th Cir. 2011) (finding that medical evaluations made after the relevant time period
8    are relevant where they concern the claimant's condition during the time period at issue).  The
9    Appeals Council specifically stated that it had considered the additional evidence listed on the
10   enclosed Order of Appeals Council, which included Dr. Mosson's opinions., AR 2, 7-8 (listing
11   Exhibits 24F and 30F, which contain Dr. Mosson's opinions), but ultimately found that the
12   evidence did not provide a basis for changing the ALJ's decision. *Id*. at 2.  Accordingly,
13   plaintiff's contention that the Appeals Council erred by not considering Dr. Mosson's opinion is
14   without merit.

15   Plaintiff also argues that the Appeals Council erred by failing to give specific and
16   legitimate reasons for rejecting Dr. Mosson's opinion. ECF No. 17 at 16.  The general rule is that
17   an ALJ may not reject the contradicted opinion of a treating physician absent specific and
18   legitimate reasons. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  However, the Ninth Circuit
19   has made clear that district courts do not have jurisdiction to review whether or not an Appeals
20   Council appropriately denied a request for review of an ALJ's decision. *Taylor*, 659 F.2d at 1131
21   (9th Cir. 2011) ("When the Appeals Council denies a request for review, it is a non-final agency
22   action not subject to judicial review because the ALJ's decision becomes the final decision of the
23   Commissioner.").  In *Taylor*, the Ninth Circuit found that when the Appeals Council considers
24   additional evidence from a treating physician, but denies review, the council need not provide a
25   "detailed rationale" or make any evidentiary findings for why it rejected the opinions. *Id*. at 131-
26   1232 (9th Cir. 2011) (citing *Gomez v. Charter*, 74 F.3d 967 (9th Cir. 1996)).  Thus, while the
27   Appeals Council was required to consider Dr. Mosson's opinion in assessing whether to grant
28   review, it was not required provide a detailed explanation for why such evidence did not warrant

7

1  review of the ALJ's decision.  Accordingly, plaintiff has failed to demonstrate that the Appeals
2  Council committed reversible error.

3         B.  The ALJ Did Not Err in Assessing the Plaintiff's Credibility

4         Plaintiff next argues that the ALJ erred in finding that she was not credible.  ECF No. 17
5  at 17-22.  In evaluating whether subjective complaints are credible, the ALJ should first consider
6  objective medical evidence and then consider other factors.  *Bunnell v. Sullivan*, 947 F.2d 341,
7  344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ
8  then may consider the nature of the symptoms alleged, including aggravating factors, medication,
9  treatment and functional restrictions.  *See id*. at 345–47.  The ALJ also may consider: (1) the
10 applicant's reputation for truthfulness, prior inconsistent statements, or other inconsistent
11 testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a
12 prescribed course of treatment, and (3) the applicant's daily activities.  *Smolen v. Chater*, 80 F.3d
13 1273, 1284 (9th Cir. 1996).  Work records, physician and third party testimony about nature,
14 severity and effect of symptoms, and inconsistencies between testimony and conduct also may be
15 relevant.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek
16 treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ
17 in determining whether the alleged associated pain is not a significant nonexertional impairment.
18 *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part,
19 on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir.
20 1989), which cannot substitute for medical diagnosis.  *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6
21 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the
22 Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."
23 *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999).

24        Plaintiff testified that she can walk one block for 10 to 15 minutes, sit and stand for five to
25 fifteen minutes, and that she cannot lift a gallon of milk, lift more than five pounds, kneel, or
26 climb stairs well.  AR 53-54, 55-58.  She also alleged that she cannot see well enough to drive at
27 night.  Plaintiff also testified to feeling sad, worthless, and having difficulty focusing.  *Id*. at 53.
28 /////

The ALJ found that the plaintiff's testimony regarding her limitations was not credible. *Id*. 33. The ALJ pointed to numerous places in the record to support this finding. *Id*. 34-35. In total, he provided five distinct reasons for rejecting plaintiff's testimony: (1) plaintiff did not seek, or sought limited treatment, for some of her alleged conditions; (2) "the objective evidence does not support plaintiff's allegations[;]" (3) plaintiff only sough routine treatment for her alleged impairments; (4) the record was inconsistent with plaintiff's allegations; (5) "plaintiff's activities of daily living are not consistent with the alleged degree of impairment." *Id*.

First, the ALJ noted that plaintiff did not seek adequate treatment for two of her alleged conditions, the vision impairment and her depression. *Id* at 34. Plaintiff's failure to seek treatment for an alleged impairment was a valid consideration in assessing plaintiff's testimony. *Lester*, 81 F.3d at 831. The ALJ specifically noted that plaintiff did not seek treatment for her alleged vision problems. AR 34. Plaintiff does not contend that she sought treatment for any vision problem, and the court's independent review of the record failed to uncover any such records.

The ALJ also concluded that plaintiff did not seek meaningful treatment for her alleged depression. Plaintiff points out that she was prescribed Xanax. ECF No. 17 at 20. The record reflects that plaintiff's treating physician, Dr. Runte, prescribed Xanax to plaintiff. AR 249-251; *see also* 431-497 (plaintiff's list of prescribed medications). The treatment records, however, indicated that plaintiff was also dealing with specific circumstances that would have led to the prescription of Xanax rather than chronic, debilitating depression. Dr. Runte's treatment note on November 18, 2009 indicates that plaintiff was upset due to her daughter having recently lost a set of twins. *Id*. at 251. The treatment notes also indicate that plaintiff was suffering from low energy likely due to her failure to get B12 vitamin injections. *Id*. Furthermore, there is no evidence in plaintiff's medical records that indicates that plaintiff sought further treatment other than taking Xanax. Thus, the ALJ properly considered the lack of mental health treatment in assessing plaintiff's credibility.

The ALJ also found that the medical evidence was not consistent with plaintiff's testimony. Although the inconsistency of objective findings with subjective claims may not be

the sole reason for rejecting subjective complaints of pain, *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997), it is one factor which may be considered. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). As observed by the ALJ, Dr. Tay, one of plaintiff's treating physicians, found that plaintiff showed no evidence of nerve root compromise or cord compromise based on MRI results. *Id*. 336-338. Furthermore, plaintiff had normal gait and had no signs of skin cancer from May 2010 biopsies. *Id*. at 246. As for mental impairments, the ALJ noted that "[n]o physician or psychologist supports the claimant's allegations." *Id*. at 34.

Plaintiff argues that the ALJ missed objective evidence that would support plaintiff's allegations of pain. Plaintiff cites a June 2009 x-ray that documented "severe cervical spondylosis involving C5-6," *id*. at 301, an MRI that documented degenerative disc disease; disc space narrowing, bone spurring, and soft disc herniation. *Id*. at 209. Further, plaintiff was found to have 14 out of 18 tender points of fibromyalgia by her treating rheumatologist Dr. Chhugani. *Id*. at 396-397.

Indeed, the record contains conflicting evidence. However, as defendant points out, when the evidence supports more than one rational interpretation, the court shall defer to the ALJ. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Here the ALJ's interpretation of the objective evidence was reasonable. As the ALJ pointed out, none of the doctors' opinions he had before him suggested that plaintiff was experiencing the type of pain that she alleged. Moreover, it was one but not the only basis for rejecting plaintiff's subjective complaints. Accordingly, it was proper for the ALJ to consider the objective evidence when assessing plaintiff's credibility.

The ALJ also noted that plaintiff's activities of daily living were not consistent with the alleged degree of impairment. AR 35. As noted by the ALJ, plaintiff reported being able to dust, mop, cook fast meals, wash dishes at times, use the dishwasher, fold laundry, water the flowers, and go grocery shopping every three weeks for 15 to 20 minutes. *Id*. at 55-57. Plaintiff's allegations regarding her debilitating pain and functional limitations, which included the inability to lift a gallon of milk, are inconsistent with her reported activities. *See Smolen,* 80 F.3d at 1284 (ALJ may rely on inconsistent testimony in assessing a claimant's credibility).

Plaintiff argues that the ALJ exaggerated her daily activates and "did not convey the depth and extent of her functional limitations." EFC No 17 at 21. As the plaintiff points out, she testified that she was limited in the daily activities she did perform. She testified that she only swam for about 5 minutes because it reduced her pain. AR 58. She also testified that she only was only able to water the plants in 15 minute increments and she could not cook like she used to because she could not stand long enough. *Id*. Plaintiff's report of daily activities certainly does not suggest someone without limitations. However, as the ALJ points out, he did not cite the activities to show that they "equate to work activity or show the ability to engage in work." *Id*. at 35. Rather, he used those examples to contrast plaintiff's testimony of extremely limiting allegations from the alleged severity of her symptoms. Although her daily activities demonstrated a limited functioning individual, they were inconsistent with her highly limiting and essentially nonfunctioning allegations.

The ALJ also gave reduced weight to plaintiff's credibility because the record reflected largely standard treatment for common and ordinary medical problems. The conservative nature of plaintiff's treatment provides a clear and convincing reason for rejecting plaintiff's statements concerning the severity of her impairments. *See Parra v. Astrue,* 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."). In finding that plaintiff's treatment was conservative, the ALJ observed that plaintiff had not been referred to any specialist. AR 34. However, as argued by plaintiff, the record shows that plaintiff had been evaluated by different specialists. Id. at 336-338, 392-397, 398-399, 503-513. Thus, this last reason was not a legitimate basis for discrediting plaintiff's testimony. Nonetheless, as explained above, the ALJ provided numerous reasons for discounting plaintiff's testimony, which were supported by substantial evidence in the record. Accordingly, any error in relying on this last reason was harmless.

Accordingly, the ALJ gave several clear and convincing reasons for discrediting plaintiff's testimony.

/////

/////

C.  The ALJ did not err in assessing the credibility of lay testimony

Plaintiff contends the ALJ also erred in rejecting the evidence from plaintiff's daughter and husband.  Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). An ALJ must consider this testimony in determining whether a claimant can work.  *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also* 20 C.F.R. § 416.913(d)(4); *Smolen*, 80 F.3d at 1288.  However, in doing so the ALJ is free to evaluate that testimony and determine the appropriate weight it should be given in the light of the other evidence.  To discount the testimony of a lay witness, the ALJ must "give reasons that are germane to each witness." *Id.* at 1053; *see also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

The ALJ specifically addressed the statements provided by Ms. Abalos, plaintiff's daughter, and Mr. Bifarella, plaintiff's husband, but ultimately concluded that their statements did not justify a different RFC determination.  AR 35.  First, the ALJ observed that neither plaintiff's daughter nor husband testified at the hearing and were therefore not subjected to cross examination.  The mere fact that these individuals were not subjected to cross examination does not itself undermine their credibility.

As for Ms. Abalos, the ALJ specifically found that she had insufficient contact with plaintiff to provide a probative account as she only reported seeing plaintiff four times a week.  It is unclear how seeing plaintiff on the majority of days in any given week would be insufficient to provide enough knowledge to render an accurate account of plaintiff's limitations and daily activities.  Accordingly, this reason is also insufficient.  However, the ALJ ultimately found that Ms. Abalos's statements were consistent with his finding that plaintiff retains the ability to perform light work.

In her third-party statement, Ms. Abalos reports that plaintiff is able to perform a number of activities.  AR 186-193.  She reported that plaintiff takes care of her dogs, picks up around the house, does dishes, visits with friends, goes grocery shopping, cooks simple meals, does laundry,

12

watering (presumably plants), and can perform up to an hour of house work. *Id*. at 186-191. This evidence tends to support the ALJ's finding that plaintiff can perform light work. While Ms. Abalos did state that plaintiff has difficulty lifting items and can walk great distances, these statements simply repeated or duplicated plaintiff's allegations, which the ALJ properly discounted. *See Valentine v. Astrue*, 574 F.3d 685,694 (9th Cir. 2009) (where clear and convincing reasons given for rejecting subjective complaints of plaintiff and third party testimony mirrors plaintiff's, germane reasons given for rejecting third party evidence).

As for Mr. Bifarella's statement, the ALJ specifically found that it "conflicts with and fails to overcome the probative effect of the medical evidence in this case." AR 35. In a letter, Mr. Bifarella reported that plaintiff is not able to do many of the things she once did. *Id*. at 216. Mr. Bifarella explained that plaintiff can no longer ride in a vehicle for long periods of time, was in "so much pain," has become depressed because "she cannot do something as simple as go to a movie," will soon be unable to lift her grandchild, and is not able to drive. *Id*.

The ALJ's finding that Bifarella's statements conflicted with the weight of the medical evidence was a germane reason for rejecting his statements. *Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."). Accordingly, the ALJ did not err in rejecting the lay testimony.

IV. <u>CONCLUSION</u>

The ALJ applied the proper legal standard and therefore there was no legal error. Therefore, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: September 30, 2014.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE